ATTORNEYS FOR APPELLANT
Bryan H. Babb
Kelly M. Scanlan
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Michael P. Bishop
Heather Wysong Zaiger
Cohen Garelick & Glazier PC
Indianapolis, Indiana



In the

# Indiana Supreme Court

No. 03S04-0810-CV-560

IN RE ADOPTION OF UNBORN CHILD OF B.W.

W.G.,                                        *Appellant-Petitioner,*

v.

D.B. AND J.B.,                               *Appellees-Respondents.*

Appeal from the Bartholomew Superior Court, No. 03D01-0609-AD-1774
The Honorable Chris D. Monroe, Judge

On Transfer from the Indiana Court of Appeals, No. 03A04-0802-CV-107

**June 26, 2009**

**Dickson, Justice.**

The question presented is whether the appellant biological father's[1] consent to the adoption of his child was irrevocably implied when he failed to file a motion to contest in the adoption court but did take concurrent steps to establish paternity and preserve and assert his parental rights in another court. Upon our consideration of the asserted statutory provisions and the facts of this case, we find that this appellant father's actions did not irrevocably imply his consent,

---

[1] Pursuant to Indiana Administrative Rule 9(G)(4)(d), this opinion avoids reference to the names of the parties and affected persons.

upon which the adoption decree was predicated, and thus reverse the judgment of the trial court.

The relevant facts are not in dispute. In 2006 the unmarried father, W.G., and mother, B.W., shared a brief relationship during which they conceived a child. After the mother expressed a desire to place the unborn child for adoption, the father registered with Indiana's Putative[2] Father Registry.[3] At some point during the pregnancy, the mother contacted an adoption agency, LDS Family Services, and an interested couple was found. The mother executed pre- and post-birth forms giving consent for the adoptive parents, D.B. and J.B., to have temporary custody of the child, pending the outcome of the adoption proceedings.

In late September 2006, shortly before the child's anticipated birth, the adoptive parents filed an adoption petition in Bartholomew County Superior Court ("the Superior Court"). The petition alleged, among other things, that the appellant was the child's biological father and was currently incarcerated in the county jail. Appellant's App'x at 8, ¶ 6. When two days later the child was born, the Superior Court granted the adoptive parents temporary custody, and the child has since remained in their custody.

On October 2, 2006, while incarcerated, the father received notice of the pending adoption. This notice complied with the dictates in Indiana Code § 31-19-4-5 describing the form that notice to a named father must take. The notice instructed that if the father desired to contest

---

[2] The phrase "putative father" is defined by Indiana Code § 31-9-2-100 as a person who "is alleged to be or claims that he may be a child's father," but who is not statutorily presumed to be the child's father by reason of marriage, attempted marriage, genetic testing, or having received the child into his home and openly held out the child as his biological child pursuant to Indiana Code §§ 31-14-7-1(1), -1(2), and for whom paternity of the child has not been established in a court proceeding or by executing a paternity affidavit.

[3] The Registry serves in part to preserve a father's right to oppose an adoption while simultaneously assuring the biological mother and adoptive parents that, when a putative father fails to register after a set time, an adoption can proceed without apprehension that it might later be upended. Many state putative father registry laws were direct legislative responses to the circumstances surrounding the well-publicized "Baby Jessica" and "Baby Richard" cases. *See* Mary Beck, *Toward a National Putative Father Registry Database*, 25 Harv. J.L. & Pub. Pol'y 1031, 1036 (2002); *see generally* Andrew S. Rosenman, Note, *Babies Jessica, Richard, and Emily: The Need for Legislative Reform of Adoption Laws*, 70 Chi.-Kent L. Rev. 1851 (1995). In general, to be entitled to notice of an adoption, a putative father must register with the State Department of Health not later than thirty days after the child's birth or the filing of a petition for the child's adoption. *See* Ind. Code § 31-19-5-12.

the adoption, he

> . . . must file a motion to contest the adoption of the child in accordance with IC 31-19-10-1 in the above named court, or a Paternity action under IC 31-14 in relation to the child, not later than thirty (30) days after the date of service of this notice.
> If [the father], or who claims to be the father of the child:
>
> > (1) does not file:
> > > (A) a motion to contest the adoption; or
> > > (B) a Paternity action under IC 31-14;
> > within thirty (30) days after service of this notice; or
> > (2) after filing a paternity action under IC 31-14 fails to establish paternity;
> > the above named court will hear and determine the petition for adoption. His consent will be irrevocably implied and he will lose his right to contest either the adoption or the validity of his implied consent to the adoption. He will lose his right to establish his paternity of the child under IC 31-14.
> > . . . .
> > This notice complies with IC 31-19-5 but does not exhaustively set forth a putative father's legal obligations under the Indiana adoption statutes. A person being served notice of this issue should consult the Indiana adoption statutes.

Appellant's App'x at 16-17.

This notice informed the father that, if he sought to contest the adoption, he should file either a motion to contest the adoption in the Superior Court or a paternity action. The father never filed a motion to contest the adoption in the Superior Court, but on October 19, well within thirty days of receiving notice of the adoption, using a pre-printed one-page form and having filled in its blanks, he filed a pro se paternity action in Bartholomew County Circuit Court ("the Circuit Court"), in which he sought to be adjudged the child's father and to "be required to fulfill the obligations of a father." *Id.* at 27. The local court rules permitted adoption petitions to be filed in any court, but required that all paternity cases "shall be filed" in the Circuit Court. *See* Bartholomew County LR-AR Rule 17-1(c). On October 31, also within the thirty-day limit, the father, pro se, filed in the same paternity action a more expansive, individualized petition entitled, "Petition to Establish Paternity and Contest Adoption of Unknown Minor Child," which specifically sought to "establish the paternity of the below minor child born out of wedlock," "contest any adoption or termination of the parent-child relationship of that same child," and

"[s]et a Hearing Date to stop all adoption procedures of the unknown minor child."[4] Appellant's Supp. App'x at 11-12. On November 6, James A. Shoaf, attorney in the Superior Court adoption proceeding for both the biological mother and the adoptive parents, filed in the Circuit Court paternity action his appearance for LDS Family Services and a motion that it be permitted to intervene, which motion was granted. In January of 2007 attorney James Kilburn appeared for the father, and in March Shoaf filed in the Circuit Court a motion to dismiss the paternity petition on behalf of both LDS Family Services and the biological mother, citing the pending adoption proceedings in the Superior Court. The Circuit Court denied the motion and ordered the father to submit to DNA testing.

The June 21, 2007 Circuit Court hearing on the DNA test results was attended by the father, pro se, and by the mother, in person and with Shoaf as her counsel. When asked if Kilburn was still his attorney, the father replied, "No. As of less than 24 hours ago, he withdrew because he had a conflict with the Judge here or something."[5] Supp. Tr. at 5. Upon motion of the State, which intervened for the purpose of establishing paternity, the child was also made a party to the action. The Circuit Court received evidence and, on June 28, entered a judgment finding that DNA testing resulted in a 99.99% probability of paternity and establishing paternity of the child in the father, adjudicating him to be the legal and biological father of the child, but without any reference to custody, parenting time, or support. Appellant's Supp. App'x at 50-51.

Meanwhile, on June 25 the adoptive parents moved for a final hearing on their adoption petition in the Superior Court, and it was scheduled for and held August 23, 2007. According to a certificate of service filed by Shoaf, a copy of the motion for final hearing was sent not to the father but only to Kilburn, the father's former attorney in the Circuit Court case. Appellant's App'x at 20, 23 ¶9. Similarly, a copy of the Order scheduling the date and time of the final hearing is shown to have been sent only to Kilburn, not to the father. *Id*. at 21, 23 ¶ 9. The adoptive parents and the biological mother were present at the hearing, but the father did not appear, either

---

[4] When transfer was granted, the record contained only materials from the Superior Court adoption proceeding. After hearing argument from the parties, this Court, pursuant to Evidence Rule 201, entered a March 18, 2009 order taking judicial notice of the materials in the Circuit Court paternity action and integrating them into the appellate record.

[5] We find no withdrawal of Kilburn's appearance otherwise reflected in the Circuit Court case record.

pro se or by counsel. No attorney had entered any appearance for the father in the Superior Court adoption proceedings until approximately one month after the final adoption decree.[6] At the adoption hearing, counsel for the adoptive parents argued to the Superior Court that the father had irrevocably and impliedly consented to the adoption solely because he had not filed a motion to contest the adoption in that court within thirty days of receiving notice of the petition on October 2. *Id.* at 61-63. In support of their argument, the adoptive parents submitted various documents, including a copy of the father's paternity petition, a chronological case summary from the Circuit Court, and a copy of the Circuit's Court paternity judgment. *Id.* at 22-30, 64-65. The Superior Court case records clearly reflected that the father had filed a pro se petition to establish paternity and to contest the adoption in Circuit Court. *Id.* at 65.

The Superior Court entered an order finding that the father had failed to file in the Superior Court a timely motion to contest the adoption as required by Indiana Code § 31-19-10-1(b) and, based solely on this ground, it found the father's consent therefore irrevocably implied under Indiana Code § 31-19-9-12(1). The court also found adoption to be in the child's best interests, granted the adoption, and ordered that the father's parental rights be terminated.[7]

Appealing the adoption judgment, the father has asserted that the trial court erroneously determined his consent to have been irrevocably implied, and that the adoption was therefore improperly granted without his consent. The Court of Appeals affirmed the adoption decree, concluding that, "[a]lthough [the father] filed his petition to establish paternity in the paternity court within the required thirty days following service, he did not file a motion to contest [the] adoption in the proper court." In the Matter of the Adoption of the Unborn Child of B.W., 889

---

[6] On September 18, 2007, attorney Tammara Jo Sparks entered her appearance in the Superior Court for the putative father and filed a motion to set aside the adoption, asserting that the father had not received any notice of the adoption hearing. Appellant's App'x at 35-36.

[7] Also noteworthy are the father's post-decree efforts that took place in both courts. In the Circuit Court, the father filed a "Petition to Establish Custody and Parenting Time," Appellant's Supp. App'x at 53-54, which the Circuit Court stayed after finding that it lacked jurisdiction over custody issues in light of the Superior Court proceedings, *id.* at 63-64. And in the Superior Court the father filed a Motion to Set Aside Adoption and an Amended Motion to Set Aside Adoption informing the court that he had established paternity in the Circuit Court, that custody issues were pending, that he had not received notice of the final adoption hearing, and asking the Superior Court to set a hearing and to set the adoption aside. Appellant's App'x at 35, 36, ¶ 7. He was not successful in these efforts.

N.E.2d 1236, 1240-41 (Ind. Ct. App. 2008). We granted transfer.

Challenging the adoption decree, the father's principal argument is that his actions in timely moving to establish paternity and to contest the adoption in the Circuit Court were sufficient to forestall his being deemed to have impliedly consented to the adoption. Defending the Superior Court adoption judgment, the adoptive parents argue that Indiana Code § 31-19-10-1 required the father to file a motion to contest the adoption in the Superior Court and that when he failed to do so within thirty days of receiving notice, his consent to the adoption became irrevocably implied under Indiana Code § 31-19-9-12(1). Noting that the father acted pro se when he petitioned to establish paternity and moved to contest the adoption in Circuit Court, the adoptive parents argue that they had no obligation to point out to the father what they claim was his mistake because pro se litigants are held to the same standards as licensed attorneys.

The adoption of a minor child generally requires, among other things, the written consent not only of the child's mother, but also the child's father if the child is born during their marriage or, if not, of the father of the child whose paternity has been established by law. But the adoption consent of a putative father may be implied under circumstances specified by statute:

> A putative father's consent to adoption is irrevocably implied without further court action if the putative father:
> > (1) fails to file:
> > > (A) a motion to contest the adoption in accordance with IC 31-19-10; and
> > > (B) a paternity action under IC 31-14;
> > within thirty (30) days after service of notice under IC 31-19-4;
> > (2) having filed a motion to contest the adoption in accordance with IC 31-19-10, fails to appear at the hearing set to contest the adoption;
> > (3) having filed a paternity action under IC 31-14, fails to establish paternity in the action; or
> > (4) is required to but fails to register with the putative father registry established by IC 31-19-5 within the period under IC 31-19-5-12.

Ind. Code § 31-19-9-12.

When the General Assembly overhauled Indiana's adoption statutes in 1997, it specified mechanisms through which putative fathers should receive notice of pending adoption proceedings and could contest those proceedings, but limited the ability later to challenge an adoption if the putative father failed to take certain steps. *See id.* §§ 31-19-1 to -29. To that end, the Gener-

6

al Assembly enacted § 31-19-4-5, which applies to the "Notice to Named Father,"[8] and provides that the notice must include the following language:

> If _____ (putative father's name) seeks to contest the adoption of the child, he must file a motion to contest the adoption in accordance with IC 31-19-10-1 in the above named court, or a paternity action under IC 31-14 not later than thirty (30) days after the date of service of this notice.
> If _____ (putative father's name):
>> (1) does not file:
>>> (A) a motion to contest the adoption; or
>>> (B) a paternity action under IC 31-14;
>> within thirty (30) days after service of this notice;
>> or
>> (2) after filing a paternity action under IC 31-14 fails to establish paternity;
> the above named court will hear and determine the petition for adoption. His consent will be irrevocably implied and he will lose his right to contest either the adoption or the validity of his implied consent to the adoption. He will lose his right to establish his paternity of the child under IC 31-14.

*Id.* § 31-19-4-5. The statute further provides that, "This notice complies with IC 31-19-4-5 but does not exhaustively set forth a putative father's legal obligations under the Indiana adoption statutes. A person being served with this notice should consult the Indiana adoption statutes." *Id.*

The notice that the father received on October 2, 2006, substantially tracked the language of § 31-19-4-5. Thus, the notice informed the father that his consent to adoption would be irrevocably implied if he failed to preserve his right to object to an adoption petition by *either* filing a motion to contest the adoption *or* filing a paternity action. When the father received notice of the adoption proceedings, within the designated time limit he attempted to do both. He commenced a paternity action, and filed to contest the adoption, but both steps were taken in the Circuit Court, which the adoptive parents contend nullified the father's attempt to contest the adoption.

The statute authorizing the filing of a motion to contest an adoption states: "A person contesting an adoption must file a motion to contest the adoption *with the court* not later than thirty (30) days after service of notice of the pending adoption." *Id.* § 31-19-10-1(b) (emphasis

---

[8] This section applies to the appellant because he registered with the Putative Father Registry before the child's birth and because the mother disclosed his identity in the course of the adoption.

added).  The phrase "with the court" is not further defined or explained in the statute.

The adoptive parents argue that the phrase "with the court" in Indiana Code § 31-19-10-1 should be understood to refer to the court in which the adoption petition is pending; that, since the father failed to file his motion to contest the adoption in the Superior Court, his Circuit Court attempt to contest the adoption was of no moment; and that this erroneous filing warranted the Superior Court to find the father's consent to the adoption irrevocably implied and thereafter to grant the adoption.

Seeking to reconcile the language of § 31-19-10-1, which does not designate the court in which a motion to contest adoption must be filed, with that of the notice statute, § 31-19-4-5, which requires that the putative father be notified that he "must file a motion to contest the adoption of the child . . . in the above named court, or a Paternity action," the adoptive parents point out that this statute's mandated Notice to Named Father also states that a putative father's legal obligations under the Indiana adoption statutes are not exhaustively set forth in the notice and "[a] person being served with this notice should consult the Indiana adoption statutes."  Thus, the adoptive parents argue, these provisions can be harmonized to effectuate both, given the recognition of the named father's obligation to further consult the Indiana adoption statutes.  The father disputes the adoptive parents' construction of Indiana Code § 31-19-10-1 and argues that "with the court" does not restrict him to the Superior Court.

When different statutes are apparently inconsistent in some respects, we consider whether they "can be rationalized to give effect to both," and if so, "then it is our duty to do so."  Wright v. Gettinger, 428 N.E.2d 1212, 1219 (Ind. 1981).  "So long as two statutes can be read in harmony with one another, we presume that the Legislature intended for them both to have effect."  State v. Universal Outdoor, Inc., 880 N.E.2d 1188, 1191 (Ind. 2008) (internal quotation marks omitted).

Regardless of whether the father's attempt to contest in the Circuit Court the adoption petition filed in the Superior Court was sufficient, it is agreed that he did properly and timely commence a paternity action and thereafter obtained a judgment establishing his paternity of the

8

child.  Although the parties offer persuasive competing arguments regarding the proper interpretation of §§ 31-19-4-5 and 31-19-10-1(b), both parties apparently read § 31-19-9-12(1) to trigger a putative father's implied consent if the putative father fails *either* to institute a paternity action *or* to file a motion to contest the adoption.  This interpretation effectively replaces the provision's "and" with an "or."

To the contrary, the plain language of § 31-19-9-12(1) authorizes a court to determine irrevocable implied consent only when a putative father fails in *both* respects, i.e., only when, within thirty days after receiving notice of the adoption petition, the putative father fails *both* to file a motion to contest the adoption *and also* to file a paternity action.  But if he does either within the thirty-day time period, this precludes a court from finding his implied irrevocable consent to the adoption under this section.  In order to be deemed to have given irrevocably implied consent, the named father, in accordance with Indiana Code § 31-19-9-12(1), must fail to file, not *either*, but *both* a paternity action and a motion to contest the adoption within thirty days after service of notice.

Applying the plain language of § 31-19-9-12(1) to require a putative father to fail in both respects is entirely consistent with the plain language of § 31-19-4-5, which, in addition to providing (through the statutorily mandated notice) a putative father's initial exposure to his obligations under the adoption statutes, indicates that putative fathers have a choice about how to proceed—they "must file a motion to contest the adoption of the child . . . in the above named court, *or* a Paternity action."  It is thus unnecessary to impose a strained construction on either of these two provisions so as to read them in harmony with each other.

In addition, the adoption statute creates a statutory proceeding unknown at common law and, under well-established principles, this Court must strictly construe the statute in favor of the rights of biological parents.  Adoptive Parents of M.L.V. v. Wilkens, 598 N.E.2d 1054, 1056 (Ind. 1992) (citing Emmons v. Dinelli, 235 Ind. 249, 133 N.E.2d 56 (1956)).

This interpretation finds additional support inasmuch as "[t]he adoption statutes contemplate concurrent jurisdiction by paternity and adoption courts."  In re Adoption of A.N.S., 741

N.E.2d 780, 784 (Ind. Ct. App. 2001). Where a putative father opts under § 31-19-9-12(1) to file a paternity petition, the statute anticipates situations where an adoption petition is concurrently pending. In that circumstance, "the court in which the petition for adoption has been filed has exclusive jurisdiction over the child, and the paternity proceeding *must be consolidated* with the adoption proceeding." Ind. Code § 31-19-2-14(a) (emphasis added). This common-sense requirement understands that such concurrent actions are best resolved in one forum—resolution of paternity is a generally necessary prerequisite to completion of adoption proceedings since a legally proven biological father's consent to an adoption is required. *See* In re Adoption of A.N.S., 741 N.E.2d at 784; In re M.B.H., 571 N.E.2d 1283, 1285 (Ind. Ct. App. 1991); Ind. Code § 31-19-9-1(a)(2). And, moreover, if the putative father "fails to establish paternity in the action," his consent will be irrevocably implied without further court action. Ind. Code § 31-19-9-12(3).

In this case, the father timely sought to establish his paternity and asserted his parental rights in the court designated in the local court rules. It is further noteworthy that Indiana Code § 31-35-1-4.5 provides that a "putative father's consent to the *termination of the parent-child relationship* is irrevocably implied" only if the father (1) fails to file "a paternity action under IC 31-14 . . . or in a court located in another state that is competent to obtain jurisdiction over the paternity action" within thirty days after receiving notice; or (2) having done so, "fails to establish paternity in the paternity proceeding within a reasonable period." Ind. Code § 31-35-1-4.5 (emphasis added). And section 31-14-10-1 provides, "Upon finding that a man is the child's biological father, *the court shall* . . . conduct a hearing to determine the issues of support, custody, and parenting time." *Id.* § 31-14-10-1 (emphasis added). In this case, the Superior Court, despite having been informed that a paternity action had been timely filed in Circuit Court, and subsequently being advised that the father had successfully established his paternity, nevertheless granted the adoption and terminated the father's constitutionally protected parental rights without the father's consent. This father timely registered with the Putative Father Registry, filed a petition to establish paternity and contested the adoption in the Circuit Court, putting all parties on notice that he desired to play a role in his child's life and that he sought adjudication of his parental rights.

Not at issue in this case is whether the putative father's consent should be irrevocably im-

10

plied due to his failure "to appear at the hearing set to contest the adoption" pursuant to § 31-19-9-12(2). No such hearing was ever scheduled. Moreover, at no time before the trial court or on appeal have the adoptive parents asserted the putative father's failure to appear at such a hearing as grounds for finding his implied consent. Nor did the trial court base its implied consent decision upon the defendant's failure to appear either at such a hearing or at the final adoption hearing. This is not surprising given the fact that notice of the date of the final adoption hearing was sent not to the putative father but only to his former attorney in the Circuit Court matter, which attorney had never entered an appearance in the Superior Court adoption proceedings. If the facts had been otherwise, that is, where a putative father files the statutory motion to contest the adoption but then fails after receiving notice "to appear at the hearing set to contest the adoption," then his consent to the adoption may be irrevocably implied pursuant to Section 12(2) of the statute. The expeditious placement of eligible children in permanent adoptive homes should not be unnecessarily delayed or jeopardized.

In sum, we hold that under Indiana Code § 31-19-9-12(1), to be deemed to have implied his irrevocable consent to an adoption, a putative father must fail to file both a paternity action and a motion to contest the adoption. The appellant-father here undisputedly timely filed his paternity action. It is therefore unnecessary to decide whether his timely attempt to contest the adoption, filed in the Circuit Court rather than in the Superior Court where the adoption was pending, satisfied the adoption implied consent statute. The paternity action sufficed to preclude a finding of implied irrevocable consent to the adoption.

## Conclusion

Because the trial court's decree of adoption was predicated upon its erroneous determination that the father's consent to the adoption was irrevocably implied by law, we reverse the judgment and remand this matter to the Superior Court for further proceedings not inconsistent with this opinion.

Sullivan and Rucker, JJ., concur. Boehm, J., concurs with separate opinion.
Shepard, C.J., dissents with separate opinion.

11

**Boehm, Justice, concurring.**

I concur in the majority opinion. I write separately to observe that these statutes, taken together, seem to provide multiple opportunities for confusion or even intentional obfuscation. I agree that the majority has worked through these seemingly inconsistent provisions in a manner that is consistent with the language of the statutes, and perhaps necessary to avoid forfeiture of important parental rights. But this is an area where all agree that the simplicity, clarity, speed, and finality we desire in all legal proceedings are of even higher priority in the interest of prompt and final resolution of the child's status. The statutes should not permit a filing in another court to suspend the prompt resolution of an adoption. Dueling jurisdictions, or even the need for transfer and consolidation, are formulas for delay. Nor should there be any doubt what a putative father must do to preserve his rights.

I hope the General Assembly will consider requiring that a putative father wishing to contest an adoption or declare paternity must file in the court in which an adoption action is pending or otherwise assure consolidation of these two proceedings to reduce the opportunity for delay and confusion, while still preserving all rights of the putative father.

SHEPARD, Chief Justice, dissenting.

The Code section at issue in this case, Ind. Code § 31-19-9-12(1), reflects two straightforward ideas:

1. An objection to an adoption by someone other than a parent is a non-event, and
2. A parent who receives notice of an adoption and decides not to participate loses.

Thus, I see the section 12(1) as declaring that a putative father who acts to establish parenthood and actively contests an adoption is not deemed to have consented to the adoption. A putative father who fails to do them both is deemed to have consented.

Holding that a putative father can derail an otherwise lawful adoption by doing just one but not the other, as the Court does today, may help the occasional blunderer, like the inmate in this case.

But it will also provide a very simple roadmap for obstructionists, a tool to use in preventing what my colleagues call the "expeditious placement of eligible children."

In this instance, it prevents the expeditious placement of a child who has known only these adoptive parents during the entire thirty-two months since his birth.

As for _where_ a putative father must object, I find it easy enough to say that he must object in the court where the adoption is filed. It is true that the statute does not explicitly require that, but neither do the Rules of Trial Procedure adopted by this Court, for example. The Trial Rules do not say explicitly that one must file the answer to a complaint in the same court where the complaint was filed. Likewise, there are other statutes that provide an opportunity for objection, like the chance to object to an appraiser's report in a condemnation, that do not compel that the objection be filed in the court where the condemnation is pending. I would like to think that in either instance we would hold that a person who filed in another court or another county didn't get the job done. I would so hold here, saying that the putative father did not timely object to the adoption and that his consent was given by operation of law.