## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 27 2015, 10:12 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS

Steven M. Bush
Christopher W. Kimbrough
Millbranth & Bush
Valparaiso, Indiana

ATTORNEYS FOR APPELLEES

Jill Sisson
Michael A. Fish
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Adoption of
B.J.P., Minor Child,

B.W. and J.P.,

*Appellants-Respondents,*

v.

N.C. and K.C.,

*Appellees-Petitioners*

February 27, 2015

Court of Appeals Case No.
64A03-1409-AD-329

Appeal from the Porter Superior Court.
The Honorable William E. Alexa, Judge.
Cause No. 64D02-1307-AD-6168

**Baker, Judge.**

[1] B.W. (Mother) appeals the judgment of the trial court denying her motion to withdraw her consent to the adoption of her child, B.P. (Child). Finding that Mother failed to withdraw her consent within the thirty-day time period allowed for by statute and that she has not shown her original consent to be the result of duress, fraud, or any other consent-vitiating factor, we affirm.

## Facts

[2] Child was born on July 23, 2012, to Mother and J.P. (Father). Mother, who was seventeen years old at the time, lived with her grandparents, who were then her legal guardians. At some point in 2013, Mother spoke with K.C. and N.C. (Aunt and Uncle) and decided that it would be in Child's best interests to be adopted by Aunt and Uncle.

[3] On June 28, 2013, Mother and her grandmother met Aunt and Uncle at their attorney's office to discuss Child's adoption. Mother was not represented by independent counsel at this meeting. At the end of the meeting, the attorney decided that it would be best for Mother's grandparents to sign a consent agreement and then, when Mother turned eighteen, for her to sign as well. Mother's grandparents signed the agreement on July 3, 2013.

[4] On July 11, 2013, Aunt and Uncle filed a Verified Petition for Adoption of Minor Child. Father, who had provided Child with no support since Child's birth, was served notice of the adoption by publication. Father's consent to the

adoption was irrevocably implied when he failed to contest the adoption within the time period allowed for by statute.[1] Ind. Code § 31-19-9-18.

[5] On September 6, 2013, Mother, who was now eighteen years old, returned to Aunt and Uncle's attorney's office to sign a consent agreement. As had been the case before, Mother was not represented by independent counsel. Mother signed the agreement, attesting that, among other things, she understood that adoption would terminate her parental rights, she was under no compulsion, duress, or undue influence, she believed it was in Child's best interests to be adopted by Aunt and Uncle, and she consented to Child being placed in their sole care, custody, and control.

[6] However, on January 3, 2014, Mother filed a Verified Motion to Withdraw Consent to Adoption of Minor Child. In her motion, Mother claimed that she felt she had no choice but to sign the consent agreement at the time. She claimed that her consent "was essentially obtained by coercion and [she] was under extreme duress at the time she signed" the agreement. Appellant's App. p. 18. Mother also claimed that, before adopting Child, Aunt and Uncle had promised Mother that they would allow her to see Child any time she wished, but they had not kept their word. Finally, Mother claimed she was not given the opportunity to seek independent legal counsel before signing the agreement.

---

[1] Although Father did eventually contest the adoption, he did not do so until March 28, 2014, well over thirty days after he was served with notice.

On June 20, 2014, the trial court held a hearing that Mother, now represented by counsel, attended. On August 19, 2014, the trial court issued an order denying Mother's motion to withdraw consent. Among other things, the trial court found that Mother failed to withdraw her consent within the thirty-day time period allowed for by statute and that she had not shown her original consent to be the result of duress, fraud, or any other consent-vitiating factor. Mother now appeals.

## Discussion and Decision

When we review a trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to only one conclusion and the trial court reached the opposite conclusion. *In re Adoption of H.N.P.G.*, 878 N.E.2d 900, 903 (Ind. Ct. App. 2008). We will not reweigh the evidence; rather, we will examine the evidence most favorable to the trial court's decision together with the reasonable inferences drawn therefrom. *Id.* We will affirm if sufficient evidence exists to sustain the decision. *In re Adoption of M.A.S.*, 815 N.E.2d 216, 219 (Ind. Ct. App. 2004). The trial court is presumed to be correct and it is the appellant's burden to overcome that presumption. *Id.*

The adoption statute creates a proceeding unknown at common law. *In re B.W.*, 908 N.E.2d 586, 593 (Ind. 2009). This Court must strictly construe the statute in favor of the rights of biological parents. *Id.* However, we must also be mindful that "careful administration of the statute serves purposes beyond protecting the rights of natural parents to be with their children." *In re Adoption*

*of A.S.*, 912 N.E.2d 840, 848 (Ind. Ct. App. 2009). "It also serves to protect children and to shield all involved parties from unnecessary instability and uncertainty." *Id.*

[10] Indiana Code section 31-19-10-3 provides that consent to adoption may not be withdrawn more than "thirty (30) days after the consent to adoption is signed." Because it is undisputed that Mother failed to withdraw her consent within this time period, Mother bases her initial argument on her rights under the United States Constitution.

[11] The right to raise one's child is an essential and basic right that is protected by the Fourteenth Amendment to the United States Constitution. *In re Adoption of M.P.S., Jr.*, 963 N.E.2d 625, 629 (Ind. Ct. App. 2012). Therefore, Indiana's statutes governing adoption should not be construed so as to destroy safeguards erected for the preservation of family relationships. *Id.* "For the execution of a parent's consent to the adoption of his or her child to be valid, the consent must be a voluntary consent to the termination of all parental rights." *Id.* To be voluntary, "it must be an act of the parent's own volition, free from duress, fraud, or consent-vitiating factors." *Id.*

[12] Mother argues that her consent was obtained through duress. She asserts that she "believed she would have regular visitation with [Child] because she lived two doors down from [Aunt and Uncle]." Appellant's Br. p. 13. Indeed, the record does show that, while Mother continued to reside with her grandparents, she visited Child "[a]lmost every single day. . . ." Tr. p. 37. However, when

Mother moved out of her grandparent's home,[2] she did not continue to visit child nearly as often.

[13] Mother points to this Court's decision in *M.P.S.*, in which the child's adoptive parents had promised the mother that she would be allowed to visit the child but had not kept their promise. 963 N.E.2d at 630. We considered this as a factor when determining whether the mother had consented voluntarily.[3] *Id.* However, in this case, there is nothing in the record indicating that Mother was promised, or even led to believe, that she would be allowed to visit Child. It is true that she visited Child frequently before moving out of her grandparent's house, but any change in visitation appears to be due to her change of residence rather than any action on the part of Aunt and Uncle. Although Mother testified that Aunt and Uncle told her she couldn't come see Child, Aunt and Uncle testified that Mother had only asked to see Child twice and had come to see Child once. Tr. p. 37, 64, 74-75.

[14] Mother also points out that she was not represented by counsel throughout this process. We have previously held that "the advice and consultation of an

[2] Although it is unclear from the record where Mother was living at the time of the June 20, 2014, hearing, she stated that she intended to move in with her then-fiancé. Tr. p. 41-42.

[3] Mother mischaracterizes our holding in *M.P.S.* when she claims that "the court held that the mother's consent to the adoption of her minor child was involuntary because the mother had the impression she would have continued contact with the child." Appellant's Br. p. 12. First, the mother in *M.P.S.* did not have a mere impression that she would be allowed visitation, but was explicitly promised so. 963 N.E.2d at 630. Second, this fact alone was not determinative, as we concluded in *M.P.S.* that "[t]he record is replete with evidence of procedural error, involuntariness, and fraud upon the court." *Id.* at 632. A broken promise of visitation was one factor out of many. *Id.*

attorney is not a condition precedent to the execution of a valid consent to adoption." *Matter of Adoption of Hewitt*, 396 N.E.2d 938, 941 (Ind. Ct. App. 1979). Though we recognize this holding, we would certainly prefer to have seen both sides represented by counsel in this matter. Although the record is unclear as to what extent Mother was informed of her right to obtain counsel,[4] we wish to make clear that all parties to an adoption should be informed of their right to seek counsel and given sufficient time to do so. And, especially in the case of a party as young as Mother, attorneys should be disinclined to enter into such agreements before all sides have sought the advice of counsel.

[15] However, while we are significantly troubled by the fact that Mother lacked independent legal representation in this matter, given all the circumstances, we do not find that her consent was involuntary. Mother was given more than two months in between the first and second meetings to consider her decision. The evidence supports the trial court's determination that Mother consented voluntarily. *See* Tr. p. 53-56. We will not reweigh this evidence on appeal.

[16] Mother next argues that her consent was not valid because it was not given in open court. Although Mother acknowledges that the adoption statute does not require consent to be given in open court, she argues that we should read the statute to include this requirement. Mother advocates for this reading because the statute governing voluntary termination of parental rights *does* require that

---

[4] Mother does not recall any conversation to this effect. Tr. p. 31. Her grandmother testified that Mother had been informed of her right to an attorney. Tr. p. 53.

consent be given in open court and Mother believes that the two statutes should have the same requirements. Ind. Code § 31-35-1-6.

[17] Mother's interpretation, while sensible, is simply not the law. Indiana Code section 31-19-9-2 provides that consent to adoption may be executed in the presence of the court, a notary public, or an authorized agent of the Department of Child Services. On the other hand, Indiana Code section 31-35-1-6, governing consent to the termination of parental rights, provides that such consent must be given in open court except in certain cases. Thus, while parents who are voluntarily terminating their parental rights must consent in open court, parents who are consenting to have their children adopted are not required to do so.

[18] In support of her contention, Mother cites our Supreme Court's opinion in *Neal v. DeKalb County Division of Family and Children*, in which the Court held that a "parent's written consent to the voluntary termination of parental rights is invalid unless she appears in open court to acknowledge her consent to the termination," unless other exceptions apply. 796 N.E.2d 280, 285 (Ind. 2003). This is certainly true, but this case is not helpful to Mother's argument as it did not involve adoption.

[19] Mother argues that, because both voluntary termination and adoption permanently terminate a parent's parental rights, the statutes governing these processes "should be harmonized to provide the same withdrawal of consent procedures and fully protect the rights of the natural parent." Appellant's Br. p.

17. Mother argues that one should be required to consent to adoption in open court because "a neutral, detached magistrate is in the best position to determine whether a parent understands the ramifications of entering into an adoption or voluntar[ily] terminating their parental rights." *Id.* at 18. This may be true, but as the adoption statute unambiguously allows parents to consent to adoption outside of the presence of such a magistrate, it is the province of the General Assembly, rather than this Court, to consider such an argument.

[20] Finally, Aunt and Uncle request damages pursuant to Indiana Appellate Rule 66(E). Rule 66(E) provides that "[t]he Court may assess damages if an appeal . . . is frivolous or in bad faith." Aunt and Uncle argue that this appeal was frivolous and in bad faith because Mother's "pinnacle argument was that [she] needed to first appear before a court" to consent to the adoption. Appellee's Br. p. 14.

[21] We disagree with this interpretation of Mother's argument. Mother's initial argument is that her consent to the adoption was involuntary. This argument, while not a winning one, was a reasonable argument to make. While we ultimately disagree with Mother, we are certainly troubled by some aspects of her situation, especially her lack of legal representation throughout the proceedings. Although Mother's second argument failed as well, we cannot conclude that her argument as a whole was frivolous or in bad faith. Consequently, we refuse to assess damages.

The judgment of the trial court is affirmed.

Vaidik, C.J., and Riley, J., concur.