**In re The ADOPTION OF A.M.**

**No. 53A05–1002–AD–71.**

Court of Appeals of Indiana.

July 21, 2010.

**614**

Donald W. Francis, Jr., Bloomington, IN, Attorney for Appellant.

## OPINION

BROWN, Judge.

M.M. ("Grandfather") appeals the denial of his uncontested petition to adopt A.M., Grandfather's biological granddaughter. Grandfather raises one issue, which we revise and restate as whether the trial court erred in denying Grandfather's uncontested petition to adopt A.M. We reverse and remand.[1]

The relevant facts follow. M.L.M. ("Mother"), who is the daughter of Grand-

father, and A.C. ("Father") are the biological parents of A.M., who was born on September 8, 2005. On April 24, 2009, Grandfather filed a petition for adoption of A.M. The petition stated in part:

> [Mother] is the natural mother of said [A.M.] and she consents to said adoption and joins in this Petition for Adoption for purposes of maintaining her maternal rights and that she consents to said adoption by joining in this Petition for Adoption. [Mother] is not terminating or relinquishing her legal maternal rights.

Appellant's Appendix at 54. Father filed a consent to adoption.

On September 30, 2009, the trial court entered a decree of adoption which granted Grandfather's petition for adoption. The decree stated in part: "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the above-entitled petition for the adoption of [A.M.] is hereby approved and granted and that by this order, [Mother] is not divested of her maternal rights due to the fact that she and [Grandfather] are not married." *Id.* at 59. On October 26, 2009, the trial court entered an Order Vacating Decree of Adoption, which stated:

> The Court, on its own motion, now finds that the Decree of Adoption signed September 30, 2009 purports to terminate the parental rights of the [Father] and to permit the maternal grandfather to adopt. This order was entered in error.

---

1. We observe that an appellee's brief was not filed as no party contests the adoption. When an appellee fails to submit a brief, we do not undertake the burden of developing the appellee's arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes prima facie error. *Zoller v. Zoller*, 858 N.E.2d 124, 126 (Ind.Ct. App.2006). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. *Wright v. Wright*, 782 N.E.2d 363, 366 (Ind.Ct.App.2002). However, we review *de novo* questions of law, regardless of the appellee's failure to submit a brief. *McClure v. Cooper*, 893 N.E.2d 337, 339 (Ind.Ct.App.2008).

It is therefore Ordered, Adjudged and Decreed that the Decree of Adoption entered September 30, 2009 is vacated, and this matter is set for further hearing on the 7th day of January, 2010 at 2:00 p.m. [Father] is ordered to appear at this hearing. The Petitioner shall provide notice to [Father] of the hearing.

*Id.* at 60.

On November 17, 2009, Grandfather filed a motion to correct error and argued that Father's "attendance at any hearing under this cause is neither required nor necessary." *Id.* at 61. After a hearing on December 2, 2009, the trial court stated that there was one issue: whether or not the adoption could be done under Indiana law. The court stated that "if the Court finds that this is an acceptable practice under Indiana Law the Court will grant the adoption." Transcript at 43.

On December 23, 2009, the trial court denied Grandfather's motion to correct error and denied Grandfather's petition for adoption. The trial court's order stated:

4. [Grandfather] concedes that there is no statutory authority that would allow a biological parent to maintain their [sic] parental rights following the issuance of a decree of adoption by a grandparent. Indeed, I.C. 31–19–15–1 appears to preclude this outcome.

\* \* \* \* \* \*

5. However, [Grandfather] correctly notes that, in certain narrowly defined situations, a biological parent has been allowed to maintain their parental rights following an adoption by a third party. See *[In re Adoption of K.S.P.]*, 804 N.E.2d 1253 (Ind.Ct.App.2004). See also *[In re Adoption of M.M.G.C.]*, 785 N.E.2d 267, 270 (Ind.Ct.App.2003); *[In re Infant Girl W.]*, 845 N.E.2d 229 (Ind.Ct.App.2006) [, *trans. denied* ]; *[Mariga v. Flint]*, 822 N.E.2d 620 (Ind.Ct.App.2005).

6. The above-cited cases are highly fact specific. They do share a common component: The adoptive parent and the consenting parent cohabitate. The adults and the child form a cohesive family unit. The adoptive parent provides primary, day-to-day care for the child.

7. [Grandfather] concedes that he does not live in the same house as [A.M.], but argues that he provides significant emotional and financial support for the child. [Grandfather] does see [A.M.] 3 to 4 times per week. The child regularly visits his home. [Grandfather] is the primary male figure in [A.M.]'s life. He also provides significant financial support for the child. However, it cannot be said that [Grandfather], [Mother], and [A.M.] form a family unit as contemplated by the Appellate Court in [*K.S.P.*].

8. [Grandfather] argues that the holding in [*K.S.P.*] should be expanded to include grandparents who do not reside in the child's home and who do not provide primary care for the child on an everyday basis. This may indeed be desirable. However, it is beyond the authority of the trial court to grant this relief. Modification of the Indiana adoption statutes, as urged by the petitioner, requires legislative, and not judicial, action.

Appellant's Appendix at 5–6.

The issue is whether the trial court erred in denying Grandfather's petition to

adopt A.M.[2] Grandfather argues that he and M.L.M. "are not proposing a 'new adoptive family' for A.M. To the contrary, all the evidence showed that they fully intend that nothing at all should change in [A.M.'s] life." Appellant's Brief at 6. Grandfather also argues that "[f]rom the child-centric point of view of [A.M.], everything would go on as before in that both [Grandfather] and [Mother] will continue to act as [A.M.'s] parents." *Id.*

On review, we will not disturb a trial court's ruling in adoption proceedings unless the evidence would lead to but one conclusion and the trial court reached the opposite conclusion. *Adoption of M.M.G.C.*, 785 N.E.2d 267 (Ind.Ct.App. 2003). We will neither reweigh the evidence nor assess the credibility of witnesses, and we will examine only the evidence most favorable to the trial court's

decision. *Id.* We owe no deference, however, to a trial court's legal conclusions. *Id.*

The Indiana Supreme Court has held that the best interests of the child is the primary concern in an adoption proceeding. *Adoptive Parents of M.L.V. v. Wilkens*, 598 N.E.2d 1054, 1058 (Ind.1992). "[T]the adoption statute creates a statutory proceeding unknown at common law," and we "must strictly construe the statute in favor of the rights of biological parents." *In re B.W.*, 908 N.E.2d 586, 592 (Ind.2009) (citing *Adoptive Parents of M.L.V.*, 598 N.E.2d at 1056). Although the adoption statute is to be strictly construed, the statute is not to be so strictly construed as to defeat its purposes. *Emmons v. Dinelli*, 235 Ind. 249, 260–261, 133 N.E.2d 56, 61 (1956).

---

2. We observe that the record reveals that some requirements for adoption may not have been met. Ind.Code § 31–19–7–1 governs prior written approval of placements in a proposed adoptive home and provides that "[a]'child may not be placed in a proposed adoptive home without the prior written approval of a licensed child placing agency or county office of family and children approved for that purpose by the department." Ind. Code § 31–19–7–3 provides that "[a]pproval under this chapter for placement in a proposed adoptive home must be filed with the petition for adoption." The record contains no showing that this requirement was met. *Cf. In re Adoption of K.S.P.*, 804 N.E.2d 1253, 1254 (Ind.Ct.App.2004) (holding that "as required by statute, the Newton County Office of Family and Children . . . filed with the trial court an Adoptive Family Preparation Summary regarding the proposed adoption"); *In re Adoption of M.M.G.C.*, 785 N.E.2d 267, 268 (Ind.Ct.App.2003) ("On June 6, 2001, as required by Indiana Code Sections 31–19–7–1 and 31–19–7–3, the Lake County Division of Family and Children Services . . . submitted to the trial court a written summary for each of Amber's adoption petitions."). It appears that the trial court waived this requirement and the issue is not raised on appeal.

Further, the record does not reveal that a proper criminal history check occurred. Ind. Code § 31–19–2–7.5 governs the submission of information, forms or consents for a criminal history check. In his petition, Grandfather stated that he "has never been charged or convicted of a felony or misdemeanor relating to the health and safety of a child." Appellant's Appendix at 54. At the hearing, the trial court asked Grandfather whether he had ever been charged or convicted of a felony or misdemeanor relating to the health and safety of a child, and Grandfather responded that he had not. Grandfather testified that he had been employed for twenty-five years at Crane Naval Center and possesses a secret security clearance. The trial court stated in its Decree of Adoption: "The Court finds and [Grandfather] has affirmed that [Grandfather] has never been charged or convicted of a felony or misdemeanor relating to the health and safety of a child." *Id.* at 58. However, we observe that Ind.Code § 31–19–2–7.3 provides that "[a] court may not waive any criminal history check requirements set forth in this chapter." Again, this issue is not raised on appeal.

We will first consider *In re Adoption of M.M.G.C.*, 785 N.E.2d 267 (Ind.Ct.App. 2003), and *In re Adoption of K.S.P.*, 804 N.E.2d 1253, 1256 (Ind.Ct.App.2004), which are cited by the trial court and by Grandfather. In *In re Adoption of M.M.G.C.*, the court addressed whether a second adoptive parent may adopt a child without divesting the rights of the first adoptive parent. The court observed that the then existing Indiana statutory law did "not expressly divest the rights of an adoptive parent in the event of a second-parent adoption," and "neither [did] it expressly permit two unmarried adults to simultaneously exercise these rights with respect to an adopted child." 785 N.E.2d at 270. The court stated that "[h]aving determined that the adoption statutes do not specifically address the issue in this case, we must look to the common law." *Id.*

The court held:

> The right of adoption was unknown at common law. *In Re Perry*, 83 Ind.App. 456, 464–65, 148 N.E. 163, 166 (1925). Our General Assembly has since enacted statutes permitting adoptions by married couples, stepparents, and single adults. With respect to these statutes, we have noted that the primary concern in every adoption proceeding is the best interest of the child. *B.G. v. H.S.*, 509 N.E.2d 214, 217 (Ind.Ct.App.1987) [, *reh'g denied*]. "The state has a strong interest in providing stable homes for children. To this end, early, permanent placement of children with adoptive families furthers the interests of both the child and the state." *Id.* A two-parent adoption enables a child to be raised in a stable, supportive, and nurturing environment and precludes the possibility of state wardship in the event of one parent's death. Such an adoption also legally entitles the child to both parents' employer-and/or government-sponsored health and disability insurance; education, housing, and nutrition assistance; and social security benefits. Undoubtedly, it would be in the best interest of the three children in the instant case to be entitled to the legal protections and advantages that a two-parent adoption provides.

> "The strength and genius of the common law lies in its ability to adapt to the changing needs of the society it governs." *Brooks v. Robinson*, 259 Ind. 16, 22–23, 284 N.E.2d 794, 797 (1972). "We cannot close our eyes to the legal and social needs of our society, and this Court should not hesitate to alter, amend, or abrogate the common law when society's needs so dictate." *Sandy Ridge Oil Co. v. Centerre Bank Nat'l Assoc.*, 510 N.E.2d 667, 670 (Ind.1987). We note, however, that "such determinations should be consonant with the evolving body of public policy adopted by the General Assembly." *Bartrom v. Adjustment Bureau, Inc.*, 618 N.E.2d 1, 7 (Ind.1993). Consonant with our General Assembly's policy of providing stable homes for children through adoption, *we conclude that Indiana's common law permits a second parent to adopt a child without divesting the rights of the first adoptive parent.* Allowing a second parent to share legal responsibility for the financial, spiritual, educational, and emotional well-being of the child in a stable, supportive, and nurturing environment can only be in the best interest of that child.

*Id.* at 270–271 (emphasis added). The court expressly limited its holding by noting that it did not "reach the question of whether a second-parent adoption would divest all rights of a biological parent with respect to the child where the child's prospective adoptive parent and the child's biological parent are not married to each other," nor "the question of whether two

unmarried adults may adopt a child by filing a joint petition for adoption." *Id.* at 270 n. 1.

In *In re Adoption of K.S.P.*, the court squarely addressed one of the issues that was reserved in *M.M.G.C.*, that is, whether a second-parent adoption would divest all rights of a biological parent with respect to the child where the child's prospective parent and the child's biological parent are not married to each other. 804 N.E.2d at 1256. In *K.S.P.*, J.P. and K.S.P. were the biological children of Linda Lutz and John Potat. Lutz and Potat were legally divorced in October 1994, and Lutz retained legal custody of the children since the divorce. *Id.* at 1254.

On March 5, 2003, Monica Polchert, Lutz's domestic partner, filed an adoption petition with the trial court. *Id.* Along with the petition, Lutz and Potat each filed written consents to the adoption. *Id.* After a hearing on the uncontested adoption petition, Polchert and Lutz testified that they wished to share parental rights. *Id.* The trial court denied Polchert's petition based upon Ind.Code § 31–19–15–1 and Ind.Code § 31–19–15–2. *Id.* at 1255.

On appeal, the court examined Ind.Code § 31–19–15–1 and Ind.Code § 31–19–15–2. *Id.* at 1256–1257. Ind.Code § 31–19–15–1 (the divesting statute) at that time provided: [3]

> Except as provided in section 2 of this chapter or IC–31–19–16, if the biological parents of an adopted person are alive, the biological parents are:
>
> (1) relieved of all legal duties and obligations to the adopted child; and
>
> (2) divested of all rights with respect to the child; after the adoption.

The court reasoned that "[t]his statute provides two specific exceptions to the general rule that an adoption divests all parental rights of a living biological parent." *Id.* at 1256. The relevant exception, Ind.Code § 31–19–15–2, governed stepparent adoptions and provided at that time: [4]

> (a) If the adoptive parent of a child is married to a biological parent of the child, the parent-child relationship of the biological parent is not affected by the adoption.
>
> (b) After the adoption, the adoptive father or mother, or both:
>
> (1) occupy the same position toward the child that the adoptive father or the adoptive mother, or both, would occupy if the adoptive father or adoptive mother, or both, were the biological father or mother; and
>
> (2) are jointly and severally liable for the maintenance and education of the person.

The court held that "[a] strict literal reading of these two statutes would seem to support the trial court's determination that if it were to grant Polchert's petition for adoption, [Lutz's] parental rights to her children would be divested, a consequence clearly unintended by the couple." *Id.* at 1257. The court held that "[i]n light of the purpose and spirit of Indiana's adoption laws, we conclude that the legislature could not have intended such a destructive and absurd result." *Id.*

The court observed that the guiding principle of statutes governing the parent-child relationship is the best interests of the child. *Id.* The court held:

> [W]e have observed that the relationship between parent and child is a bundle of

---

**3.** Ind.Code § 31–19–15–1 was amended in 2005 and 2009. *See* Pub.L. No. 130–2005, § 8 (eff. July 1, 2005); and Pub.L. No. 58–2009, § 24 (eff. July 1, 2009).

**4.** Ind.Code § 31–19–15–2 was amended in 2005. *See* Pub.L. No. 130–2005, § 9 (eff. July 1, 2005).

human rights of such fundamental importance that adoption statutes, being in derogation of the common law, should be "strictly construed in favor of a worthy parent and the preservation of such relationship." *Adoption of Thomas,* 431 N.E.2d 506, 512 (Ind.Ct.App.1982). "Thus the liberal construction rule must be tempered by a counterbalancing rule, that is, neither should the adoption statute be so liberally construed that it would destroy the safeguards erected for preservation of family relationships." *Id.* at 512–13; *see also Paternity of Baby Girl,* 661 N.E.2d 873 [ (Ind.Ct.App.1996) ].

The only immediate threat to preservation of family relationships in the instant case is the harsh application of the divesting statute. The obvious purpose of the divesting statute is to shield the adoptive family from unnecessary instability and uncertainty arising from unwanted intrusions by the child's biological family. *See Adoptive Parents of M.L.V. v. Wilkens,* 598 N.E.2d 1054, 1056 (Ind.1992) (in addition to protecting the rights of natural parents to be with their children, Indiana's adoption statutes "operate to protect the children and to shield all involved parties from unnecessary instability and uncertainty"). *This objective, however, is not advanced by application of the divesting statute in situations involving stepparent adoptions or second-parent adoptions, where the biological parent and proposed adoptive parent are both integral members of the proposed adoptive family. In such instances, it would be absurd to fear that the biological parent, here Mother, could "intrude" into her own family.* As an oft cited trial court in New York has emphasized regarding this issue, termination of parental rights in the circumstances of this case "would be an absurd outcome which would nulli-fy the advantage sought by the proposed adoption: the creation of a legal family unit identical to the actual family setup." *Adoption of Evan,* 153 Misc.2d 844, 583 N.Y.S.2d 997, 1000 (Sur.Ct.1992). It is clear that the divesting statute, designed as a shield to protect new adoptive families, was never intended as a sword to prohibit otherwise beneficial intrafamily adoptions by second parents. *See In re Jacob,* 86 N.Y.2d 651, 636 N.Y.S.2d 716, 660 N.E.2d 397 (1995).

*Id.* at 1257–1258 (emphasis added). The court ultimately concluded that "where, as here, the prospective adoptive parent and the biological parent are both in fact acting as parents, Indiana law does not require a destructive choice between the two parents." *Id.* at 1260. Accordingly, the court reversed the trial court's denial of Polchert's petition to adopt as a second parent and remanded for further proceedings. *Id.*

■ With *M.M.G.C.* and *K.S.P.* in mind, we turn to the issue presented in this case. This case requires us to interpret Ind. Code § 31–19–15–1 and Ind.Code § 31–19–15–2. When interpreting a statute, we independently review a statute's meaning and apply it to the facts of the case under review. *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002). "The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question." *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele,* 766 N.E.2d 699, 703–704 (Ind.2002). If a statute is unambiguous, we must give the statute its clear and plain meaning. *Bolin,* 764 N.E.2d at 204. A statute is unambiguous if it is not susceptible to more than one interpretation. *Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 942 (Ind.2001).

If a statute is susceptible to multiple interpretations, we must try to ascertain

the legislature's intent and interpret the statute so as to effectuate that intent. *Bolin*, 764 N.E.2d at 204. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.* The best evidence of legislative intent is the language of the statute itself, and courts strive to give the words in a statute their plain and ordinary meaning. *Mayes v. Second Injury Fund*, 888 N.E.2d 773, 776 (Ind.2008). A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words. *Id.* We presume that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals, *Id.*

At the time Grandfather filed his petition, Ind.Code § 31–19–15–1 provided in part: [5]

(a) Except as provided in section 2 of this chapter or IC 31–19–16, if the biological parents of an adopted person are alive, the biological parents are:

(1) relieved of all legal duties and obligations to the adopted child; and

(2) divested of all rights with respect to the child;

after the adoption.

As to Ind.Code § 31–19–15–2, the legislature amended the statute in 1995 by adding subsection (b) as set forth below and redesignating former subsection (b) as present subsection (c). *See* Pub.L. No.

130–2005, § 9 (eff. July 1, 2005). The current version of the statute reads:

(a) If the adoptive parent of a child is married to a biological parent of the child, the parent-child relationship of the biological parent is not affected by the adoption.

(b) If the adoptive parent of a child is married to a previous adoptive parent, the parent-child relationship of the previous adoptive parent is not affected by the adoption.

(c) After the adoption, the adoptive father or mother, or both:

(1) occupy the same position toward the child that the adoptive father or the adoptive mother, or both, would occupy if the adoptive father or adoptive mother, or both, were the biological father or mother; and

(2) are jointly and severally liable for the maintenance and education of the person.

Ind.Code § 31–19–15–2.

As previously mentioned, the Indiana Supreme Court has held that the best interests of the child is the primary concern in an adoption proceeding. *Adoptive Parents of M.L.V.*, 598 N.E.2d at 1058. Further, although the adoption statute is to be strictly construed, the statute is not to be so strictly construed as to defeat its purposes. *Emmons*, 235 Ind. at 260–261, 133 N.E.2d at 61.

---

**5.** We note that the legislature amended Ind. Code § 31–19–15–1(a) in 2009. *See* Pub.L. No. 58–2009, § 24 (eff. July 1, 2009). The current version of subsection (a) provides:
(a) Except as provided in section 2 of this chapter or IC 31–19–16, if the biological parents of an adopted person are alive, the biological parents are:
(1) relieved of all legal duties and obligations to the adopted child; and

(2) divested of all rights with respect to the child;
and the parent-child relationship is terminated after the adoption unless the parent-child relationship was terminated by an earlier court action, operation of law, or otherwise.

Ind.Code § 31–10–2–1 is titled "Policy and purpose" and provides:

It is the policy of this state and the purpose of this title to:

(1) recognize the importance of family and children in our society;

(2) recognize the responsibility of the state to enhance the viability of children and family in our society;

(3) acknowledge the responsibility each person owes to the other;

(4) strengthen family life by assisting parents to fulfill their parental obligations;

\* \* \* \* \* \*

(6) remove children from families only when it is in the child's best interest or in the best interest of public safety;

\* \* \* \* \* \*

(10) provide a judicial procedure that:

(A) ensures fair hearings;

(B) recognizes and enforces the legal rights of children and their parents; and

(C) recognizes and enforces the accountability of children and parents[.]

While the legislature did not define "family," Ind.Code § 31–9–2–44.5 provides that "[a]n individual is a 'family or household member' of another person if the individual ... is related by blood or adoption to the other person." Thus, Grandfather is considered family under the statute. Further, Grandfather is the biological grandfather of A.M. We also observe that the record reveals that, while Mother and Grandfather are not living together, they live only fifteen minutes apart, and that A.M. stays overnight with Grandfather almost every weekend and that Grandfather has contact with A.M. about three or four times a week.

Grandfather takes A.M. to church, dance class, and the park. Grandfather provides discipline and financial support. In summary, the record reveals that Grandfather and Mother are both acting as parents.

Based upon the reasoning in *K.S.P.*, the idea that the best interests of the child is the primary concern in an adoption proceeding, the purposes of the adoption statutes as stated by the legislature, and the trial court's initial determination that adoption was in the best interests of A.M., we conclude that preventing the adoption in this specific case on the basis of Ind. Code § 31–19–15–1 and Ind.Code § 31–19–15–2 would cause an absurd result not intended by the legislature. Accordingly, we conclude that the trial court erred in denying Grandfather's uncontested petition to adopt A.M. and reverse the trial court's denial of Grandfather's petition to adopt A.M. and remand for further proceedings consistent with this opinion. On remand, we instruct the trial court to insure that all statutory requirements for adoption are met.

For the foregoing reasons, we reverse the trial court's denial of Grandfather's uncontested petition to adopt A.M.

Reversed and remanded.

VAIDIK, J. concurs.

NAJAM, J., dissents with separate opinion.

NAJAM, Judge, dissenting.

I respectfully dissent. Modification of the Indiana adoption statutes requires legislative action. There is no statutory authority for a biological parent to maintain her parental rights after the adoption by a grandparent. It is beyond the authority of the trial court or this court to grant such relief. The trial court should be affirmed.

In its initial decree of adoption, the trial court stated that "[Mother] is not divested of her maternal rights due to the fact that she and [Grandfather] are not married." The court subsequently vacated the decree concluding that it was "entered in error." In its final order denying the adoption, the court noted that "Mother's consent to the adoption is contingent on maintaining her parental rights," and held correctly that, "Indeed, IC 31–19–15–1 appears to preclude this outcome."

The trial court considered a number of "fact-specific" cases, including *K.S.P.*, 804 N.E.2d at 1254, in which a biological parent has been allowed to maintain her parental rights following an adoption by a third party. The court concluded that the common thread in those cases is the requirement that the adoptive parent and the consenting parent cohabitate and that the adults and the child form a family unit. The court then found that Grandfather, Mother and the child in this case do not form a family unit. But under our adoption statutes, whether an adoption is authorized by law does not turn on whether the parents cohabitate and form a family unit with the child. Except for a single parent adoption, the law requires that the biological parent and the adoptive parent be married to each other.

This case cannot be resolved by resorting to a recent line of cases that has stretched the adoption statutes beyond their plain meaning. Cases interpreting our adoption statutes are not common law cases but judicial interpretations of statutes enacted by our legislature. *In re Infant Girl W.*, 845 N.E.2d 229, 247 (Ind. Ct.App.2006) (Najam, J., dissenting). Our General Assembly has enacted statutes permitting adoptions by single adults, married couples, and stepparents. *M.M.G.C.*, 785 N.E.2d at 270. The parents of an adopted child must be married to each

other, whether a husband and wife are joint petitioners, or the petitioner is married to a biological or adoptive father or mother of the child. *See Infant Girl W.*, 845 N.E.2d at 251 (Najam, J., dissenting). The fact that Mother has joined in Grandfather's petition does not change the analysis or the outcome.

The divesting provision of Indiana Code Section 31–19–15–1 applies here. There is no grandparent exception to divestiture. The terms and conditions of adoption represent policy decisions vested in the legislature. *Infant Girl W.*, 845 N.E.2d at 251 (Najam, J., dissenting). It is the legislature's prerogative to establish what policies are to be furthered under the adoption statutes, including whether an unmarried couple may adopt. *Id.*

The record clearly supports the conclusion that Grandfather's adoption would be in the best interest of the child and that Grandfather is ready, willing and able to assume the responsibilities of a parent. But that is not the question presented. The proposed adoption is simply not authorized by statute and should, therefore, be disapproved.