# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 23 2016, 6:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John A. Kindley
Lakeville, Indiana

ATTORNEYS FOR APPELLEE

John E. Broden
Troy D. Warner
Leone Halpin, LLP
South Bend, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Adoption of H.A.F., | March 23, 2016 |
| A.J.F., *Appellant,* | Court of Appeals Cause No. 71A03-1505-AD-364 |
| v. | Appeal from the St. Joseph Probate Court |
| | The Honorable James N. Fox, Judge |
| A.D.F., *Appellee.* | Trial Court Cause No. 71J01-1404-AD-28 |

**Barnes, Judge.**

# Case Summary

[1] A.J.F. ("Father") appeals the trial court's order regarding a petition to adopt his child, H.A.F., which was filed by A.D.F. ("Petitioner"). We affirm.

# Issues

[2] Father raises two issues. We address one dispositive issue, which we restate as whether Father's consent to the adoption was required.

# Facts

[3] H.A.F. was born to A.B. ("Mother") and Father in December 2004. Father would usually see H.A.F. at Father's mother's house, where H.A.F. visited every other weekend. Mother began dating Petitioner in January 2006, they began living together in the spring of 2008, and they have a child together. Other than a two-year period where they lived apart with family members to save money for a house, Petitioner, Mother, their child, and H.A.F. have lived together since 2008.

[4] Father was incarcerated during 2006 and 2007 due to a theft conviction and spent six months in a work release placement in 2008. In 2009, Father was arrested and ultimately pled guilty to Class A felony rape, two counts of Class A felony criminal deviate conduct, and Class D felony impersonating a law enforcement officer. He was sentenced to seventy-five years in the Department of Correction, and he is not scheduled to be released until 2048.

[5] In April 2014, Petitioner filed a petition to adopt H.A.F. Mother consented to the adoption. Petitioner alleged that Father's consent to the adoption was unnecessary because he is unfit and because he failed to support H.A.F. for twelve months or more. Father filed a motion to contest the adoption and alleged that he had been supporting H.A.F.

[6] Father also filed a motion to dismiss, arguing that the adoption was improper under Indiana Code Section 31-19-15-1 because Mother would be divested of her parental rights if the adoption occurred. On September 2, 2014, the trial court denied Father's motion to dismiss. The trial court found that the divesting statute did not "operate automatically in the manner suggested by Father." App. p. 29. The trial court based its decision on *In re Adoption of J.T.A.*, 988 N.E.2d 1250 (Ind. Ct. App. 2013), *trans. denied*. The trial court noted that whether Petitioner and Mother could "prove the family relationships that they allege is still an open question." *Id.*

[7] After an evidentiary hearing, the trial court entered an order noting that Father had urged the trial court to reconsider its position on Indiana Code Section 31-19-15-1, but the trial court declined to do so. The trial court found that "Mother and Petitioner, along with their shared biological child and [H.A.F.], are operating as a family unit and have been operating as a family unit for years." App. p. 10. The trial court also found that Father's consent to the adoption was not required pursuant to Indiana Code Section 31-19-9-8 because Petitioner proved Father was unfit. The trial court also found that H.A.F.'s

best interests "would be served by dispensing with Father's consent to her adoption." *Id.* at 14.

[8] At Father's request, the trial court entered final judgment pursuant to Indiana Trial Rule 54(B). Father now appeals.

## Analysis

[9] Father argues that the trial court erred when it concluded that his consent to the adoption was unnecessary. When reviewing a trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *In re Adoption of M.A.S.*, 815 N.E.2d 216, 218 (Ind. Ct. App. 2004). We will not reweigh the evidence but instead will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom to determine whether sufficient evidence exists to sustain the decision. *Id.* at 218-19. The decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. *Id.* at 219.

[10] Indiana Code Section 31-19-11-1(a) provides that the trial court "shall grant the petition for adoption and enter an adoption decree" if the court hears evidence and finds, in part, that "proper consent, if consent is necessary, to the adoption has been given." According to Indiana Code Section 31-19-9-8(a), consent to adoption is not required from any of the following:

> (2)     A parent of a child in the custody of another person if for a
>          period of at least one (1) year the parent:

> (A)   fails without justifiable cause to communicate
>        significantly with the child when able to do so; or
>
> (B)   knowingly fails to provide for the care and support
>        of the child when able to do so as required by law or
>        judicial decree.
>
> * * * * *
>
> (11)   A parent if:
>
> (A)   a petitioner for adoption proves by clear and
>        convincing evidence that the parent is unfit to be a
>        parent; and
>
> (B)   the best interests of the child sought to be adopted
>        would be served if the court dispensed with the
>        parent's consent.

Petitioner was required to prove by clear and convincing evidence that Father's consent was not required under Indiana Code Section 31-19-9-8. *M.A.S.*, 815 N.E.2d at 220.

The trial court found that Petitioner did not prove Father had failed to support the H.A.F. and that Petitioner did not argue a failure to communicate. However, the trial court found that Petitioner proved Father was unfit and that the best interests of H.A.F. would be served if the trial court dispensed with Father's consent. The trial court found that Father was unfit based on his criminal history, lengthy incarceration, drug use, and the heinous nature of his most recent felony.

[12] Father seems to argue that incarceration alone does not justify a finding that he is unfit. Although we may agree that incarceration alone would not justify a finding of unfitness, we cannot say that, under the circumstances here, the evidence leads to but one conclusion and the trial court reached an opposite conclusion. Petitioner presented evidence that Father will be incarcerated until H.A.F. is in her forties. Prior to his current incarceration for rape, criminal deviate conduct, and impersonating a police officer, Father had been incarcerated for other criminal offenses. He also has a history of drug use. Given Father's history, lengthy incarceration, and the nature of his offenses, we conclude that, under the totality of the circumstances, Petitioner proved by clear and convincing evidence that Father was unfit and that H.A.F.'s best interests were served by dispensing with Father's consent. Consequently, the trial court did not err when it determined that Father's consent to the adoption was not required.

[13] Father also argues that the divesting statute, Indiana Code Section 31-19-15-1, prevents Petitioner from adopting H.A.F. We need not address that argument because Father's consent to the adoption is not required. Consent is the mechanism by which a party is entitled to say "yea" or "nay." When consent is not required the party has no input into the issues surrounding the consequences if the trial court grants the petition for adoption; they are not his to raise. However, because the dissent addresses Father's argument, we will briefly do so as well.

[14] Father and the dissent note that a strict reading of Indiana Code Section 31-19-15-1 means Petititoner's adoption of H.A.F. will terminate Mother's parental rights, which is contrary to Mother's intent and to the best interests of H.A.F. Several cases from this court addressing similar situations have held otherwise. *See In re Adoption of M.M.G.C.*, 785 N.E.2d 267 (Ind. Ct. App. 2003), *In re Adoption of K.S.P.*, 804 N.E.2d 1253 (Ind. Ct. App. 2004), *In re Adoption of A.M.*, 930 N.E.2d 613 (Ind. Ct. App. 2010), and *In re Adoption of J.T.A.*, 988 N.E.2d 1250 (Ind. Ct. App. 2013), *trans. denied*. The dissent, disagreeing with this line of case, would reverse the trial court's determination that Father's consent to the adoption is not required, presumably on the basis that H.A.F.'s best interests would not be served if the petition for adoption were to be granted.

[15] Indiana Code Section 31-19-9-8(a)(11) is a two-step process to determine if the biological parent's consent, the father in this case, is required. Because the trial court found him unfit and found that the best interests of the child would be served if the court dispensed with that consent, the next step is to consider the adoption itself using the parameters of Indiana Code Section 31-19-11-1. The question before the trial court and this court is whether Father's consent to the adoption was necessary. In addressing this question, Father can only argue H.A.F.'s best interests as they relate to him and the requirement of his consent. The question of the effect of the divesting statute is not yet squarely before this court. As we have determined that the trial court correctly found Father's consent to the adoption was not required, he has no interest with respect to further proceedings. *Cf.* Ind. Code § 31-19-5-18 (stating a putative father who

fails to timely register waives notice of an adoption proceeding and his consent to the adoption is "irrevocably implied"). What the divesting statute says and how it should be applied in considering the petition for adoption can no longer be raised by Father—assuming the question of preserving Mother's parental rights could ever be raised by Father—and he cannot bootstrap that issue onto the separate issue of whether his consent was required.

## Conclusion

[16] The trial court properly found that Father's consent to the adoption was not required. We affirm.

[17] Affirmed.

Robb, J., concurs.

Altice, J., dissents with separate opinion.

# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| In Re the Adoption of H.A.F., | ) | |
| | ) | |
| A.J.F., | ) | |
| | ) | |
| *Appellant,* | ) | |
| v. | ) | No. 71A03-1505-AD-364 |
| | ) | |
| | ) | |
| A.D.F., | ) | |
| | ) | |
| *Appellee.* | ) | |

**Altice, Judge, dissenting.**

[18] I respectfully dissent. As properly acknowledged by the majority, a parent's consent is not required if a petitioner for adoption proves by clear convincing evidence that the parent is unfit to be a parent *and* the best interests of the child would be served if the court dispensed with the parent's consent. *See* I.C. § 31-19-9-8(a)(11)(A), (B). In its analysis, however, the majority looks only to the evidence regarding Father's unfitness and neglects to consider the best interests of the child in dispensing with Father's consent. The best interest

determination at this stage is separate from, albeit similar to, consideration of the best interests of the child during subsequent adoption proceedings. I believe that the determination of whether to dispense with Father's consent requires consideration of Father's argument in assessing the best interests of H.A.F. Thus, I disagree with the majority insofar as it summarily concludes that "H.A.F.'s best interests were served by dispensing with Father's consent." *Slip op.* at 6.

[19] Regarding the child's best interests, Father argues, and I agree, that a strict reading of I.C. § 31-19-15-1 would result in not only termination of his parental rights, but also termination of Mother's parental rights if the adoption petition is granted. This result would clearly be contrary to H.A.F.'s best interests and is unintended by Mother.

[20] I recognize that this court has addressed Father's argument regarding I.C. § 31-19-15-1 in several previous cases. In each case, this court has refused to apply a strict interpretation of the statute. The issue was first addressed in the context of same-sex partner adoptions. In *In re Adoption of M.M.G.C.*, 785 N.E.2d 267 (Ind. Ct. App. 2003), a same-sex partner sought to adopt her partner's three children, who had been previously adopted by the partner. This court held that the adoption statutes did not specifically address the issue in the case and that common law permitted "a second parent to adopt a child without divesting the rights of the first adoptive parent." *M.M.G.C.*, 785 N.E.2d at 270. The court noted that: "Allowing a second parent to share legal responsibility for the financial, spiritual, educational, and emotional well-being of the child in a

stable, supportive, and nurturing environment can only be in the best interest of that child." *Id.* at 270-71.

[21] In *M.M.G.C.*, this court expressly did not "reach the question of whether a second-parent adoption would divest all rights of a biological parent with respect to the child where the child's prospective adoptive parent and the child's biological parent are not married to each other." *Id.* at 270 n.1. Another panel of this court reached that issue, however, in *In re Adoption of K.S.P.*, 804 N.E.2d 1253 (Ind. Ct. App. 2004). There, a same-sex partner sought to adopt her partner's biological children. That panel agreed that a strict literal reading of I.C. § 31-19-15-1 would seem to result in the divestiture of mother's parental rights, "a consequence clearly unintended by the couple." *K.S.P.*, 804 N.E.2d at 1257. The *K.S.P.* court concluded that, in light of the purpose and spirit of Indiana's adoption laws, "the legislature could not have intended such a destructive and absurd result." *Id.* They based that decision on the best interests of the child and the State's interest in protecting and promoting the welfare of children by expediting their entry into a suitable, stable family unit. That panel concluded that where "the prospective adoptive parent and the biological parent are both in fact acting as parents, Indiana law does not require a destructive choice between two parents." *Id.* at 1260. "Allowing continuation of the rights of both the biological and adoptive parent, where compelled by the best interests of the child, is the only rational result." *Id.*

[22] Then, in *In re Adoption of A.M.*, 930 N.E.2d 613 (Ind. Ct. App. 2010), the majority took another leap and allowed a grandfather to adopt his grandchild

while the mother (grandfather's daughter) kept her parental rights. In that case, the majority noted that the grandfather and mother were both acting as parents to the child and that the adoption was in the child's best interests. Consequently, the majority concluded that the trial court erred by denying the grandfather's uncontested petition to adopt the child. *A.M.*, 930 N.E.2d at 621.

[23] Similarly, in *In re Adoption of J.T.A.*, 988 N.E.2d 1250, 1252 (Ind. Ct. App. 2013), *trans. denied*, a father's fiancée filed a petition to adopt his child, and the trial court denied the petition. On appeal, it was held:

> [I]t is clear that both Father and Fiancée were acting as parents to the Child, that this was an intra-family adoption, and that neither Fiancée nor Father wished to have Father's parental rights terminated by the adoption. Mother argues that *K.S.P.* is not on point because unlike in that case, here Father and Fiancée could have legally married but had simply not yet done so. We disagree, and believe that this is too narrow a reading of our opinion. It is clear from the policy underlying the divesting statute, and the overarching concern for the best interest of the child, that it would be absurd and contrary to the intent of the legislature to divest Father of his parental rights where he would continue to live in a family unit with the Child and parent the Child. Father's parental rights would not have been terminated had the adoption been granted.

*J.T.A.*, 988 N.E.2d at 1253-54 (footnotes omitted).

[24] I believe the issue presented by Father, upon which our Supreme Court has yet to speak, should be revisited by this court. There is no statutory exception to divestiture for unmarried individuals operating as a family unit, and I disagree

with case law that goes against the plain language of I.C. § 31-19-15-1 to create one. The legislature created statutory exceptions to divestiture of a biological parent's rights, one of which is when "the adoptive parent of a child *is married* to a biological parent." I.C. § 31-19-15-2; *see also* I.C. § 31-19-15-1. "The marriage requirement is not mere surplusage." *In re Infant Girl W.*, 845 N.E.2d 229, 251 (Ind. Ct. App. 2006) (Najam, J., dissenting), *trans. denied*; *see also King v. S.B.*, 837 N.E.2d 965 (Ind. 2005) (Dickson, J., dissenting).

[25] To that end, I agree with Judge Najam's analysis as expressed in his dissent in *In re Adoption of A.M.*,

> This case cannot be resolved by resorting to a recent line of cases that has stretched the adoption statutes beyond their plain meaning. Cases interpreting our adoption statutes are not common law cases but judicial interpretations of statutes enacted by our legislature. Our General Assembly has enacted statutes permitting adoptions by single adults, married couples, and stepparents. The parents of an adopted child must be married to each other, whether [as] joint petitioners, or the petitioner is married to a biological or adoptive father or mother of the child.

*Adoption of A.M.*, 930 N.E.2d at 622 (Najam, J., dissenting) (citations omitted).

*See also Infant Girl W.*, 845 N.E.2d 229 (Najam, J., dissenting).

[26] As Judge Najam aptly noted in *In re Infant Girl W.*:

> Children need parents, and adoption is an unselfish act that brings parents together with the children who need them. Adoption should be encouraged, both for the good of the parties and for society at large. But adoption is a privilege, not a right. The terms and conditions of adoption represent policy decisions

vested in the legislature. It is the legislature's prerogative to establish what policies are to be furthered under the adoption statutes, including whether an unmarried couple may adopt.

845 N.E.2d at 251 (Najam, J., dissenting) (footnote omitted).

[27] While I agree that I.C. § 31-19-15-1 would not preclude Petitioner from adopting H.A.F., the statute dictates that Petitioner's adoption would terminate Mother's parental rights. In order to protect H.A.F.'s best interests, Father's concern about application of the divesting statute must be addressed. I would reverse the trial court's determination that Father's consent to the adoption of H.A.F. was not required.