## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 04 2015, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

| APPELLANT *PRO SE* | ATTORNEY FOR APPELLEE |
|---|---|
| M.S. | Lori B. Schmeltzer |
| Indianapolis, Indiana | Ciyou & Dixon, P.C. |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Adoption of:<br>N.S. and I.S.,<br><br>*Children,*<br><br>M.S.,<br><br>*Appellant/Father,*<br><br>v.<br><br>B.K.,<br><br>*Appellee/Stepfather.* | September 4, 2015<br><br>Court of Appeals Case No.<br>32A01-1411-AD-500<br><br>Appeal from the Hendricks Superior Court;<br>The Honorable Robert W. Freese, Judge;<br>32D01-1402-AD-10 |

**May, Judge.**

[1] M.S. (Father) appeals the grant of B.K.'s (Stepfather) petition to adopt N.S. and I.S. (Children). Stepfather requests appellate attorneys' fees. We affirm the trial court's decision and deny Stepfather's request.

## Facts and Procedural History

[2] Father and L.K. (Mother) were married, and Children were born of the marriage. Father and Mother divorced in 2008 after Father was incarcerated. The court awarded Mother sole legal and physical custody of Children due to Father's incarceration and did not order Father to pay child support. Mother allowed Children to speak to Father on the telephone during his incarceration. Father was released in July 2011.

[3] Following Father's release, Mother took Children to visit Father approximately every week for two to three hours in a public place. Father filed a petition to modify custody and child support in October 2012. In December 2012, Mother requested supervised parenting and drug tests for Father because she suspected he was involved in drug and criminal activity. The trial court did not rule on Father's petition to modify because Father refused to participate in discovery and was arrested in August 2013. From his release in 2011 to his arrest in 2013, Father provided little financial support to Children, despite having a job that paid $11.00 per hour. Father is still incarcerated and might serve time in federal prison for drug-related charges.

[4] Mother married Stepfather in October 2012. Since that time, Mother and Stepfather have been the primary sources of support for Children, financially

and emotionally. Stepfather is active in Children's lives; he takes them to school and attends sporting events with them. On February 24, 2014, Stepfather filed a petition to adopt Children. Mother consented to the adoption, but Father contested it. The trial court held a hearing on September 29, 2014. The hearing was held in Marion County so Father could attend despite his incarceration, and Father attended the hearing. On October 22, 2014, the trial court granted Stepfather's petition to adopt Children.

## Discussion and Decision

We first note Father proceeds in his appeal *pro se*. A litigant who proceeds *pro se* is held to the same established rules of procedure that trained counsel is bound to follow. *Smith v. Donahue*, 907 N.E.2d 553, 555 (Ind. Ct. App. 2009), *trans. denied, cert. dismissed*. One risk a litigant takes when he proceeds *pro se* is that he will not know how to accomplish all the things an attorney would know how to accomplish. *Id*. When a party elects to represent himself, there is no reason for us to indulge in any benevolent presumption on his behalf or to waive any rule for the orderly and proper conduct of his appeal. *Foley v. Mannor*, 844 N.E.2d 494, 502 (Ind. Ct. App. 2006).

### *Stepfather's Adoption Petition*

Our standard of review of adoption proceedings is well-settled:

> "When reviewing adoption proceedings, we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption." We generally give considerable deference to the trial court's decision in family law matters, because we recognize that the trial judge is in the best position to judge the facts,

determine witness credibility, "get a feel for the family dynamics," and "get a sense of the parents and their relationship with their children." We will not disturb the trial court's ruling "unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion."

*In re Adoption of O.R.*, 16 N.E.3d 965, 972-73 (Ind. 2014) (citations omitted).

Where, as here, the trial court enters findings of fact and conclusions of law *sua sponte*, we review the sufficiency of the evidence using a two-step process. *Indiana Bureau of Motor Vehicles v. McNeil*, 931 N.E.2d 897, 900 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. First, we determine whether the evidence supports the trial court's findings, and then we determine whether those findings support the judgment. *Id.* We affirm a judgment entered with findings if it can be sustained on any legal theory supported by the evidence. *Id.* *Sua sponte* findings "control only as to the issues they cover, and a general judgment will control as to the issues upon there are no findings." *Id.* "We neither reweigh the evidence nor assess the credibility of witnesses, and we will examine only the evidence most favorable to the trial court's decision." *In re Adoption of A.M.*, 930 N.E.2d 613, 616 (Ind. Ct. App. 2010).

[7] Generally, a trial court may grant a petition for adoption only if both the mother and father of the child consent. Consent of a parent is not required if the petitioner "proves by clear and convincing evidence that the parent is unfit to be a parent," Ind. Code § 31-19-9-8(a)(11), and "the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent." *Id.*

[8] The trial court concluded "[Father] is unfit to be a parent and the best interests of [Children] sought to be adopted are served by the Court's dispensation of [Father's] consent." (Appellee's App. at 18.) To support those conclusions, the trial court found:

> 19. Following the divorce of [Mother] and [Father], [Mother] was awarded sole legal and physical custody of the parties' minor children, [Children], and [Father] was provided only phone privileges with [Children] due to his incarceration and there was no child support order issued due to his incarceration for almost three (3) years.
>
> 20. After [Father] was released from jail in July or August of 2011 he did not seek to modify the court order such that he could have parenting time with [Children] until October 2012, well over a year after his release.
>
> 21. [Mother] did provide supervised and short visits with [Father] and [Children] approximately every other week for two (2) to three (3) hours following his release from incarceration in 2011, but after some time, [Father] began skipping previously arranged visits and not calling or showing for visits for several days, becoming erratic and inconsistent, which caused [Mother] concern for [Children's] safety and wellbeing, and harmed [Children].
>
> 22. [Father] has not had any overnight visits since before the parties separated in 2007, which was before [I.S.'s] second (2nd) birthday.
>
> 23. The Vigo County, Indiana, court under Cause Number 84D02-0706-DR-06135, has not issued a ruling or set a hearing on [Father's] request for parenting time, because [Father] did not respond to discovery, and has been incarcerated from August of 2013 to present.
>
> 24. [Mother] sought Supervised Parenting, and drug testing of [Father], on or about December 2012, in the Vigo County case due to his increasingly erratic and dangerous behavior, and suspicion that he was again involved in drug and criminal activity.
>
> 25. Since approximately July or August of 2008 to present, specifically, six (6) years, when [Children] were five (5) and two (2) years old, [Father's] only court adjudicated parenting time has been only phone privileges.

26. [Father] was convicted of the following crimes between 2007 and 2008:

    (a)    Vigo County, Indiana, Cause Number 84D06-0707-FD-02358, one count of Receiving Stolen Property, a D Felony, one count of Carrying a Handgun without a License, an A Misdemeanor.

    (b)    Vigo County, Indiana, Cause Number 84D06-0710-FD-03310, one count of Theft, a D Felony.

    (c)    Crawford County, Illinois, Cause Number 2008CF68, on court of Possession of Meth <5 grams, a Class 3 Felony.

    (d)    Parke County, Indiana, Cause Number 61C01-0807-FB-00135, one count of Burglary, a B Felony.

    (e)    Putnam County, Indiana, Cause Number 67C01-0809-FC-00200, one count of Burglary a C Felony.

    (f)    Vigo County, Indiana, Cause Number 84D06-0809-FB-02896, one count of Possession of a Controlled Substance, a D Felony, and one count of Dealing Methamphetamine, a B Felony.

27. [Father] served jail time for two (2) months around December of 2007, and from August of 2008 to July of 2011, for just under three (3) years in connection with the above convictions.

28. [Father] was indicted on charges of conspiracy to deal Meth and felony possession of a firearm in the Federal Southern District of Indiana, Cause Number 1:13-CR-00171-WTL-DKL-1 on August 6, 2013, and has been incarcerated in Marion County, Indiana, on a Federal Hold, awaiting trial for more than one (1) year.

29. [Father] testified that he is facing zero (0) to twenty (20) years in Federal Prison if convicted.[1]

30. [Father] has harassed and threatened [Mother] and [Stepfather] on numerous occasions, and has called [Mother] disparaging names in

---

[1] That [sic] pursuant to the Federal Sentencing Guidelines, the pending charges, and [Father's] criminal history, he is more likely to face 20 years, and if he takes the matter to trial and is convicted, he is facing a mandatory minimum life sentence in Federal Prison.

front of [Children] on several occasions, and she therefore sought a protective order against [Father], which was Ordered Ex Parte on November 9, 2012.

31.     [Mother] stated in her Petition for a Protective Order that she did not wish for [Father's] court ordered parenting time, in the form of phone privileges, to be restricted as a result of the protective order, but that said conversations with [Children] should be appropriate and [Father] should refrain from using disparaging language against her.

32.     [Mother] has not interfered or unreasonably restricted [Father's] relationship with [Children], but abided by the Court ordered phone privileges, and offered him parenting time when and where it was appropriate, but restricted same to protect [Children] from [Father's] inappropriate and harmful conduct as well as sought supervised parenting time through the proper channels by filing petitions in the Vigo County post-dissolution matter.

33.     [Father] has not substantially or financially supported [Children], or even contributed to their needs, for a majority of their lives.

34.     [Father] provided no financial support to [Children] until he was released from jail in July or August of 2011, when [Children] were eight (8) and five (5) years old.

35.     [Father] stated that he provided $1000.00 in child support in late summer of 2012 for summer camp, $200 to $300 approximately five (5) times from September to December 2011, $20 to $300 ten (10) to fifteen (15) times from January to December 2012, $400 from January to July 2013, but has no proof these payments.

36.     [Mother] did receive $1,000 in the summer of 2012, and did receive some funds from [Father], but same were sporadic and not to the extent that [Father] stated.

37.     Some of the funds [Father] stated he provided were actually gifts to [Children], and not child support.

38.     [Father's] financial support was not sufficient to provide adequately for [Children], and same only occurred for the approximately two (2) years he was out of jail until he was again arrested in August of 2013.

> 39.    [Father] has provided no financial support since he was again arrested in August of 2013 to present, for over one (1) year, with the exception of a $400 birthday gift to [I.S.], which was provided in part with funds from [Father's] mother, and which [Mother] placed in [I.S.'s] college savings account as it was a gift and not intended to be financial support given that the birthday card was addressed to [I.S.] and instructed [I.S.] to spend the money on whatever he wished.

(Appellee's App. at 12-15) (footnote in original).

[9]     Father argues he "attempted contact and communication" with Children, but "[s]aid actions have been negated, hampered or otherwise been ineffective due to Mother's contact and conduct." (Br. of Appellant at 6.) He also claims he "had continued to support [Children] while he was employed and was providing weekly or bi-weekly payments to Mother," (*id.* at 7), and Mother "has indicated that she did take the money which was provided by Father and used some of it to purchase clothing and educational items." (*Id.*) Finally, Father contends the adoption would "have some effect and provide further hardship to [Children]." (*Id.*) Father's arguments are a request for us to reweigh the evidence, which we cannot do. *See In re Adoption of A.M.*, 930 N.E.2d at 616 ("We neither reweigh the evidence nor assess the credibility of witnesses, and we will examine only the evidence most favorable to the trial court's decision."). Accordingly, we affirm the grant of Stepfather's adoption petition.

### *Stepfather's Request for Attorneys' Fees*

[10]    Stepfather requests appellate attorney's fees pursuant to Ind. Appellate Rule 66(E), which states in relevant part: "The Court may assess damages if an

appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." When determining if the assessment of appellate attorneys' fees is appropriate, we have categorized claims under "substantive" and "procedural" bad faith claims. *Thacker v. Wentzel*, 797 N.E.2d 342, 346-7 (Ind. Ct. App. 2003). Substantive bad faith requires a finding the party's arguments to be "utterly devoid of all plausibility." *Id*. Procedural bad faith occurs "when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court." *Id*.

[11] An award of appellate attorneys' fees pursuant to Rule 66(E) is discretionary and may be ordered when an appeal is "replete with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Trost–Steffan v. Steffan*, 772 N.E.2d 500, 514 (Ind. Ct. App. 2002), *reh'g denied*. In awarding these fees we must use extreme restraint because of the potential chilling effect on the exercise of the right to appeal. *Id*.

[12] Stepfather argues Father engaged in substantive and procedural bad faith because he raised "no cogent arguments," (Br. of Appellee at 27), "misstate[d] the evidence," (*id*.), and filed a brief "permeated with procedural errors which have caused Appellee to incur additional fees in preparing a responsive brief[.]" (*Id*.)

Father does not prevail on appeal, but we cannot say his arguments were void of all plausibility, and they were reasonable challenges to the court's decision to grant Stepfather's adoption petition and terminate Father's parental rights. His procedural missteps were not so egregious as to hamper our review. We accordingly deny Stepfather's request for appellate attorneys' fees.

## Conclusion

The trial court did not err when granting Stepfather's petition to adopt Children because the evidence supported the conclusions Father was unfit to be a parent and it was in the best interest of Children for the court to dispense with Father's consent. Father's arguments and procedural mistakes did not require an award of appellate attorneys' fees to Stepfather. Accordingly, we affirm the trial court's decision and deny Stepfather's request for appellate attorneys' fees.

Crone, J., and Bradford, J., concur.